James J. Davis, Jr., AK Bar No. 9412140
Savannah Fletcher, AK Bar No. 1811127
Aneliese Palmer, AK Bar No. 2201001
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: jdavis@njp-law.com
Email: sfletcher@njp-law.com
Email: apalmer@njp-law.com

Ruth Botstein, AK Bar No. 9906016
**AMERICAN CIVIL LIBERTIES UNION OF ALASKA FOUNDATION**
1057 West Fireweed Lane, Suite 207
Anchorage, AK 99503
(907) 258-0044
Email: rbotstein@acluak.org
Email: courtfilings@acluak.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAWN ADAMS & SCOTT ADAMS on behalf of H.A.; JESSICA CLARKSON & URIAH CLARKSON on behalf of W.C.; JOY HEASLEY and A. ROBERT HEASLEY on behalf of K.M-H. & M.M-H.; GANNON CLARKSON; and MITCHELL CLARKSON,<br><br>    Plaintiffs,<br><br>    vs.<br><br>MATANUSKA-SUSITNA BOROUGH SCHOOL DISTRICT,<br><br>    Defendant. | Case No. 3:23-cv-00265-SLG |

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 1 of 18

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I. PRELIMINARY STATEMENT

The Matanuska-Susitna Borough School District ("District") banned fifty-six books from all of its school libraries simply because it disagrees with the ideas in those books. This is a clear violation of students' First Amendment rights, and one that causes irreparable harm. Because it is "always in the public interest to prevent the violation of a party's constitutional rights," this Court should issue a preliminary injunction returning all fifty-six banned books to the library shelves.[1]

## II. STATEMENT OF FACTS

In April 2023, the School Board (hereinafter the "Board") for Defendant Matanuska-Susitna Borough School District (hereinafter the "District") ordered the removal of fifty-six books from all of its school libraries.[2] This includes such classics as *The Bluest Eye*, *Slaughterhouse-Five*, and *The Kite Runner*, to name just a few of the books that were banned by the District.[3]

---

[1] *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation omitted).

[2] "Library Committee Update," MSBSD Office of Instruction (Apr. 24, 2023), https://www.smore.com/d7fsy-library-committee-update?ref=email.

[3] The entire list of banned books is: *The Lovely Bones*, Alice Sebold; *Lucky*, Alice Sebold; *Call Me By Your Name*, Andre Aciman; *You A Novel*, Caroline Kepnes; *Red White and Royal Blue*, Casey McQuiston; *It Ends with Us*, Colleen Hoover; *Ugly Love*, Colleen Hoover; *Verity*, Colleen Hoover; *Red Hood*, Elena Arnold; *Living Dead Girl*, Elizabeth Scott; *Crank*, Ellen Hopkins; *Identical*, Ellen Hopkins; *Perfect*, Ellen Hopkins; *Tilt*, Ellen Hopkins; *Tricks*, Ellen Hopkins; *The Freedom Writers Diary*, Erin Gruwell; *Wicked: The Life and Times of the Wicked Witch of the West*, Gregory

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 2 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 2 of 18

The Board's action was taken in direct response to public comments from a small but vocal minority of individuals who criticized the availability of books with "LGBTQ themes" in the District's libraries.[4] For example, at the March 28, 2023, Joint Borough Assembly/School Board Meeting, many public commenters complained to the Board that school libraries should not contain any books with lesbian, gay, and transgender themes:

- "[S]omething strange is going on in the school district. . . . The school libraries throughout the valley are allegedly teeming with sexually inappropriate books. . . . And now there has been a grooming incident that allegedly happened at a book fair at the Teeland Middle School. . . . Even if I was childless I would still be appalled, outraged, and disgusted that anyone was

---

Maguire; *Exit Here*, Jason Myers; *Breathless*, Jennifer Niven; *The Haters*, Jesse Andrews; *The Carnival at Bray*, Jessie Ann Foley; *Nineteen Minutes*, Jodi Picoult; *Extremely Loud and Incredibly Close*, Jonathan Safran Foer; *Forever*, Judy Blume; *The Kite Runner Graphic Novel*, Khaled Hosseini; *The Kite Runner*, Khaled Hosseini; *The Duff*, Kody Keplinger; *Slaughterhouse-Five*, Kurt Vonnegut; *I Never*, Laura Hopper; *l8r, g8r*, Lauren Myracle; *Shine*, Lauren Myracle; *YOLO*, Lauren Myracle; *Last Night at the Telegraph Club*, Malinda Lo; *The Handmaid's Tale*, Margaret Atwood; *This One Summer*, Mariko Tamaki; *Persepolis*, Marjane Satrapi; *Persepolis 2*, Marjane Satrapi; *How Beautiful the Ordinary*, Michael Cart; *Flamer*, Mike Curato; *Sex: an Uncensored Guide*, Nikol Hasler; *Sold*, Patrician McCormick; *Drama* (Graphic Novel), Raina Telgemeier; *The Handmaid's Tale* (Graphic Novel), Renee Nault; *It's Perfectly Normal*, Robie Harris; *Water for Elephants*, Sara Gruen; *A Court of Thorns and Roses*, Sarah Maas; *A Court of Frost and Starlight*, Sarah Maas; *A Court of Mist and Fury*, Sarah Maas; *A Court of Silver Flames*, Sarah Maas; *A Court of Wings and Ruin*, Sarah Maas; *Empire of Storms*, Sarah Maas; *Kingdom of Ash*, Sarah Maas; *The Perks of Being a Wallflower*, Stephan Chbosky; *Monday's Not Coming*, Tiffany Jackson; *The Bluest Eye*, Toni Morrison; *Homegoing*, Yaa Gyasi. Matanuska-Susitna Borough Sch. Dist., *Challenged Book List* (Apr. 24, 2023), https://www.smore.com/d7fsy-library-committee-update?ref=email.

[4] "MSBSD Libraries," MSBSD Office of Instruction (Apr. 13, 2023), https://www.smore.com/nmbs1-msbsd-libraries?ref=email (stating that books have been reviewed "in response to these concerns").

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 3 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 3 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

allowed to feature LGBTQ books at a book fair. . . . It is beyond my comprehension why anyone who must have a working knowledge of English would consider anything involved with LGBTQ as not being a sexual matter. . . . In short, LGBTQ transgender is a lie. . . . They [school employees] are both sexual groomers. . . . I demand an inquiry, investigation into those allegations."[5]

- "I have sent you guys a packet with . . . a Newsmax article of what it says in some of the books that are being allowed in the libraries and in the schools. And they're very explicit. They're awful. Those things are not for children. Not even high school children. . . . Homosexual marriages will be legalized, parents will not be allowed to raise their children, the state will, women will be employed by the state and not allowed to be homemakers, divorce will be rampant and not allowed, marriages will be slowly phased out. The government will become the owner of all the factories of production and private ownership of property will be outlawed. Religion will be outlawed . . . . This is the stuff that you guys are leading our children into with introducing all this stuff. . . . Educators at the beginning, they were all a bunch of homosexual men, perversion. . . . And this is wrong to do to children. My parents kept me innocent. I liked being innocent. . . . Have you been hearing how these children are trying to have a vagina? And guess what? It's growing back in, because it wasn't made like that. . . . You're leading our children to communism and enslavement."[6]

- "A librarian and principal decided to have a book fair and it showcased LGBTQ materials against state law."[7]

- "I just learned about these sexually explicit books in our schools . . . and I am horrified this type of book is allowed to be in the schools. . . . So I got the name of four of the books and I looked them up on booklooks.org. I will never ever be able to get that out of my mind. I cannot believe those types of books and that type of reading is made public to children of any age. . . . You're not taking care of and protecting our children by having this type of garbage in our schools. . . . I thought we were a conservative Borough, and I've been proven

---

[5] "Mar. 28th, 2023 MSBSD School Board/MSB Assembly Joint Meeting," https://vimeo.com/msbsd, at 12:30–15:30.

[6] *Id.* at 16:00–19:00.

[7] "Meeting Minutes," MSBSD School Board/MSB Assembly Joint Meeting (Mar. 28, 2023), available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 4 of 18

wrong now. I'm very disappointed and I hope the School District and School Assembly gets their acts together and gets this crap out of the schools. I encouraged my daughter today to take my grandchildren out of the public schools. . . . They're not being taught, they're being groomed."[8]

- "[I do] not support porno books in school libraries, some of the books there is no other name for. This is grooming. We have child protection laws in this country."[9]

At the next Board meeting on April 5, 2023, some of the same individuals attended and again spoke against books involving LGBTQ individuals due to the books' alleged "pornographic" nature.[10] Shortly thereafter, on April 13, 2023, the District issued a letter to all parents and community members which stated: "**In response to these concerns**, Mat-Su Borough School District has been reviewing library collection policies and reviewing individual books . . . . Additionally, a Library Advisory Committee was convened to review existing collections policies and to gather information about specific library collection concerns."[11]

The week of April 24, 2023, the District emailed families formally announcing that it had removed fifty-six books from its school libraries.[12] Jillian Morrissey, the

---

[8] "Mar. 28th, 2023 MSBSD School Board/MSB Assembly Joint Meeting," https://vimeo.com/msbsd, at 22:50–24:38.

[9] "Meeting Minutes," MSBSD School Board/MSB Assembly Joint Meeting (Mar. 28, 2023), available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

[10] "Meeting Minutes," MSBSD School Board/MSB Assembly Joint Meeting (Apr. 5, 2023), available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

[11] "MSBSD Libraries," MSBSD Office of Instruction (Apr. 13, 2023), https://www.smore.com/nmbs1-msbsd-libraries?ref=email.

[12] "Library Committee Update," MSBSD Office of Instruction (Apr. 24, 2023), https://www.smore.com/d7fsy-library-committee-update?ref=email.

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 5 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Public Information Officer for the District, confirmed that the list of fifty-six books was developed based on complaints from the community about the content of the books:

> Last winter . . . we had members of the public starting to come to school board meetings. And it was about mid-January to end of January that it really started, so it was community members coming to the school board doing public testimony at meetings and also connecting with their elected officials the school board members and letting them know their concerns.[13]

When a reporter asked Morrissey "[s]o, these books were, like a community member would have called a school board member and said, 'I want this book gone, I want this book gone?'" Morrissey answered, "Absolutely. . . . Basically, it comes down to we had community members come to school board members and say they had concerns about particular books."[14]

The Advisory Committee has met four times since its creation and has issued recommendations on twelve books.[15] So far, the Board has taken no action on these recommendations.[16] All fifty-six books remain off library shelves and inaccessible to students.[17]

---

[13] Inside the District: Jillian Morrissey 2023-11-21, Big Cabbage Radio (Dec. 4, 2023), https://www.bigcabbageradio.org/2023/12/04/inside-the-district-jillian-morrissey-2023-11-21/, at 12:00–14:18.

[14] *Id.*

[15] "Book Review Outcomes," Library Citizens Advisory Committee, https://www.matsuk12.us/Page/49141 (last visited Dec. 18, 2023).

[16] *Id.*

[17] *See* Answer, Docket 7 ¶¶ 10, 12.

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 6 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Plaintiffs are a group of students (hereafter "Students") who no longer have access to the banned books. Students filed their Complaint on November 17, 2023. The District was formally served on November 27, 2023.[18]

### III. ARGUMENT AND AUTHORITIES

#### A. The Legal Standard for a Preliminary Injunction.

District courts analyze motions for preliminary injunctions using the four-factor test outlined by the Supreme Court in *Winter v. Natural Resource Defense Council* (the "*Winter* factors").[19] Under this framework, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."[20] Where the nonmovant is a governmental entity, like the District is here, "the last two *Winter* factors 'merge.'"[21] Courts must consider all four of these factors (or three, when the third and fourth factor are merged), but the first factor "is a threshold inquiry and is the most important factor."[22] This holds especially true for constitutional violations, where a showing of success on the merits "will almost always demonstrate that [the

---

[18] *See* Certificate of Service, Docket 6.

[19] *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

[20] *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018) (quoting *id.*).

[21] *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

[22] *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 7 of 18

plaintiff] is suffering irreparable harm as well."[23] Similarly, a likelihood of success on constitutional claims "tips the public interest sharply in [the plaintiff's] favor because it is 'always in the public interest to prevent the violation of a party's constitutional rights,'" and accordingly, tilts the balance of equities factor also in the plaintiff's favor.[24] In general, if a plaintiff can show that the alleged conduct likely violates the Constitution, the remaining *Winter* factors will tend to favor a preliminary injunction.[25]

### B. Plaintiffs Are Likely to Prevail on Their § 1983 Claim.

Likelihood of success is the most important of the *Winter* factors.[26] "[A]t an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation."[27] But this standard is neither high nor overly-mechanical: Students are "not required to prove a mathematical (greater than fifty percent) probability of success on the merits."[28]

Here, Students can demonstrate a high probability of success on their claim that the District violated their First Amendment rights when it banned at least fifty-

---

[23] *Baird*, 81 F.4th at 1042.

[24] *Id.* at 1040 (quoting *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

[25] *Id.* at 1044.

[26] *See Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2014); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

[27] *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009) (citation and internal quotation marks omitted).

[28] *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003).

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 8 of 18

Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 8 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

six books from all school libraries because of the viewpoints expressed in those books. Indeed, it is well-settled law that the U.S. Constitution guarantees "[t]he right to receive ideas [as] a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom."[29] Equally well-settled is that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."[30] Thus, when a school district limits book access, students' "fundamental First Amendment right[s]" become implicated.[31] The Ninth Circuit "ha[d] no hesitation in concluding . . . that a student's First Amendment rights are infringed when books that have been determined by the school district to have legitimate educational value are removed . . . because of threats of damages, lawsuits, or other forms of retaliation."[32]

    This right is at its peak in public school libraries. The Supreme Court held over forty years ago that "the special characteristics of the school *library* make that environment especially appropriate for the recognition of the First Amendment rights of students."[33] The school library is "the principal locus" of students' freedom "'to

---

[29] *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) (emphasis in original).

[30] *Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 506 (1969).

[31] *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake*, 670 F.2d 771, 779 (8th Cir. 1982).

[32] *Monteiro v. Tempe Union High Sch. Dist.,* 158 F.3d 1022, 1029 (9th Cir. 1998).

[33] *Pico*, 457 U.S. at 868 (emphasis in original).

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 9 of 18

inquire, to study and to evaluate, to gain new maturity and understanding."'[34]

Of course, school districts have discretion to manage school affairs, which may include choosing which materials they provide to students in classrooms. But this discretion does *not* apply to school library materials.[35] As the Supreme Court reasoned in *Pico v. Board of Education*, the school library is defined by its voluntary role in students' lives; it is a place where students can go to explore, learn, and challenge themselves outside of a mandatory curriculum.[36] Thus, the Court held that a school district cannot "attempt to extend [its] claim of absolute discretion beyond the compulsory environment of the classroom into the school library and the regime of voluntary inquiry that there holds sway."[37] The Eighth Circuit, citing *Pico*, explained that when a school district bans library books with which it politically disagrees, "there is more at issue . . . than the sensibilities of those viewing" the challenged materials.[38] In effect, a library book ban leverages the school board's "official power to perform an act clearly indicating that the ideas contained in [those materials] are unacceptable and should not be discussed or considered."[39] Overall,

---

[34] *Id.* at 868–69 (quoting *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)); *see also Pratt*, 670 F.2d at 776; *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 583 (6th Cir. 1976) (observing that a school library "is a mighty resource in the free marketplace of ideas").

[35] *Pico*, 457 U.S. at 868.

[36] *Id.*

[37] *Id.*

[38] *Pratt*, 670 F.2d at 779.

[39] *Id.*

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 10 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 10 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

the law on this issue is both on-point and well-established: school boards "may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal 'to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'"[40] This is viewpoint discrimination, and it violates the First Amendment.

The facts of *Pico* mirror the present case and dictate the same result. In *Pico*, a school board sought to ban nine books from its libraries due to the books' alleged "vulgarities and sexual explicitness."[41] After attending a politically conservative conference, school board members were given a list of books that they deemed "objectionable" and "improper fare for school students."[42] The books were removed from school library shelves and delivered to the school board's offices. The school board justified its decision to remove the books by characterizing them as "just plain filthy" and stating that "[it] is our duty, our moral obligation to protect the children in our schools from this moral danger."[43] The school board appointed a "Book Review Committee," consisting of community members and school staff, to read the listed books and to recommend whether the books be retained on school shelves.[44]

---

[40] *Pico*, 457 U.S. at 872 (citing *Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)).

[41] *Id.* at 861.

[42] *Id.* at 856.

[43] *Id.* at 857.

[44] *Id.*

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 11 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 11 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Ultimately, only one book was returned without restriction.[45]

The Supreme Court in *Pico* held that the First Amendment protects students' free speech right to explore a wide range of ideas in the school library — "the principal locus of such freedom" — even if those ideas are contrary to "community values."[46] While the school maintained *some* discretion to remove books from its library, it could not remove books based on a motivation to suppress the ideas expressed in those books.[47] The Court concluded that the school board's motivation to remove books "simply because they dislike the ideas contained in those books" was unconstitutional.[48]

Here, the District removed fifty-six books from all school libraries based on individual complaints from a vocal minority that the books' LGBTQ themes or protagonists of color offended their religious or personal views. By removing these books based on the ideas contained within them, the District violated students' First Amendment rights. The Board entertained individual complaints about certain books with LGBTQ themes that "appalled, outraged, and disgusted" members of the public.[49] Other members of the public argued that the books should be banned because of their alleged anti-religious or communist agenda, echoing the same

---

[45] *Id.* at 858.

[46] *Id.* at 868–69.

[47] *Id.* at 871.

[48] *Id.* at 872.

[49] "Mar. 28th, 2023 MSBSD School Board/MSB Assembly Joint Meeting," https://vimeo.com/msbsd, at 12:30–15:30.

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 12 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 12 of 18

complaints levied in *Pico* fifty years earlier.[50] The District publicly announced that it was motivated to remove the books based on this testimony. Thus, the District's decision to ban the books stemmed entirely from its desire to **suppress certain ideas in the books** that some members of the public found disagreeable.[51]

To wit, the District banned many award-winning and diverse books all of high literary and educational value. For example, Toni Morrison's *The Bluest Eye* was banned from all libraries despite the author winning the Nobel Prize for literature.[52] Kurt Vonnegut's *Slaughterhouse-Five* was also banned, despite being nominated for both the Nebula and Hugo Awards for best novel.[53] Notably, *Slaughterhouse-Five* was unconstitutionally banned by the school board in *Pico* fifty years earlier because of its anti-American themes.[54] The District also banned *Persepolis: The Story of a Childhood*, a graphic novel by Marjane Satrapi that explores the impacts of war and religious extremism, despite the book winning the American Library Association's

---

[50] *Id.* at 12:30–19:00.

[51] *See* Inside the District: Jillian Morrissey 2023-11-21, Big Cabbage Radio (Dec. 4, 2023), https://www.bigcabbageradio.org/2023/12/04/inside-the-district-jillian-morrissey-2023-11-21/, at 12:00–14:18; "MSBSD Libraries," MSBSD Office of Instruction (Apr. 13, 2023), https://www.smore.com/nmbs1-msbsd-libraries?ref=email.

[52] "The Nobel Prize in Literature 1993," The Nobel Prize, https://www.nobelprize.org/prizes/literature/1993/summary/ (last visited Dec. 18, 2023).

[53] "Slaughterhouse-Five," Nebula Awards, https://nebulas.sfwa.org/nominated-work/slaughterhouse-five/ (last visited Dec. 18, 2023); "1970 Hugo Awards," The Hugo Awards, https://www.thehugoawards.org/hugo-history/1970-hugo-awards/ (last visited Dec. 18, 2023).

[54] *Bd. of Educ. v. Pico*, 457 U.S. 853, 856 n.3 (1982).

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 13 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 13 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

award in 2004 for Best Books for Young Adults.[55] A fourth example is *Flamer*, one of the newest books banned and also an award-winning graphic novel exploring faith, sexuality, and friendship for a gay boy at Boy Scouts summer camp.[56] These books cover a wide range of topics, but generally, it appears the banned books either feature protagonists of color or queer protagonists, and/or they contain characters experiencing challenging or traumatic life events. Having these types of characters or plot points does not make these books inappropriate for school libraries; in fact, many of these books are critical to help students learn how to navigate the world. These banishments are clearly not "based solely upon the educational suitability of the books in question," but because the Board acquiesced to the objections of a few members of the public who disagree with the ideas contained within them.[57]

In fact, the District did not even read or evaluate the books before removing them from school libraries. As the District's representative confirmed, the *only* criterion for banning a book was whether a community member said "I want this book gone."[58] If just one individual complained that a book offended their religious,

---

[55] "Persepolis: The Story of a Childhood," American Library Association, https://www.ala.org/awardsgrants/content/persepolis-story-childhood (last visited Dec. 18, 2023).

[56] "Lambda Literary Awards Finalists & Winners," Lambda Literary Awards, https://lambdaliterary.org/awards/previous-winners-3 (last visited Dec. 28, 2023).

[57] *Pico*, 457 U.S. at 871.

[58] Inside the District: Jillian Morrissey 2023-11-21, Big Cabbage Radio (Dec. 4, 2023), https://www.bigcabbageradio.org/2023/12/04/inside-the-district-jillian-morrissey-2023-11-21/, at 12:00–14:18.

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 14 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

personal, or political beliefs, that book was removed from school shelves without question. This unconstitutional motive was not just the "decisive factor" in the District's decision—it was the only factor.[59]

For these reasons, Students will prevail on their § 1983 claim seeking to vindicate their First Amendment rights.

### C. Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant the Requested Preliminary Injunction.

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."[60] For constitutional violations, a showing of success on the merits "will almost always demonstrate that [the plaintiff] is suffering irreparable harm as well."[61] Specifically, the Supreme Court held in *Elrod v. Burns* that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[62]

As established above, the District violated—and continues to violate—Students' First Amendment rights by banning these books. This is enough, under *Elrod*, to establish irreparable harm. Additionally, there is no damages award that can compensate Students for the lost opportunity to explore an idea, to enjoy literature, or to read a book that might help them navigate the world.

---

[59] *Pico*, 457 U.S. at 871.

[60] *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

[61] *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).

[62] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 15 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

As a member of the public said at the April 5, 2023, School Board meeting, "[t]he limitation of these books will mean students who likely already feel marginalized will have reduced access to literary works that have characters that look and act like they do."[63] Restricting access to ideas hurts all students, but banning these specific books is especially harmful to the plaintiffs in this case. Plaintiff Students range from middle school to high school, range in their racial backgrounds, and some identify as LGBTQ individuals. This representation matters to them, and access and exposure to new ideas is crucial for their growth and development. The harm to Students goes beyond simply checking out a library book, as the Eighth Circuit explained in *Pratt v. Independent School District*:

> The symbolic effect of removing the films from the curriculum is more significant than the resulting limitation of access to the story. The board has used its official power to perform an act clearly indicating that the ideas contained in the films are unacceptable and should not be discussed or considered. This message is not lost on students and teachers, and its chilling effect is obvious.[64]

While any constitutional violation creates irreparable harm, this particular violation hamstrings Students' education, personal development and sense of self, and ability to grapple with uncomfortable ideas. The preliminary injunction is necessary to prevent further irreparable harm.

### D. The Balance of Equities and Public Interest Favor the Plaintiff.

---

[63] "Meeting Minutes," MSBSD School Board/MSB Assembly Joint Meeting (Apr. 5, 2023), available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

[64] 670 F.2d 771, 779 (8th Cir. 1982).

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 16 of 18

The last two *Winter* factors — the balance of equities and the public interest — merge in cases like this one, where the defendant is a government actor.[65] "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."[66] Conversely, "it would not be equitable or in the public's interest to allow the [defendants] . . . to violate the requirements of federal law, especially when there are no adequate remedies available."[67] This is because the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."[68]

There is a strong public interest in protecting Students' First Amendment right to access ideas in the school library free from censorship. It is not in the public's interest to allow the District to continue violating this right simply due to the pressure of a few outspoken voices that disagree with the ideas or concepts in these books. Students' constitutional right to receive information cannot and should not be subject to the discomfort of a few individuals or a local body's political whims. Thus, the requested injunction requiring the District to return all fifty-six books to its

---

[65] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[66] *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *see also Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[B]y establishing a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of equities favor a preliminary injunction.").

[67] *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

[68] *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 17 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 17 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

shelves will further the public interest.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant a preliminary injunction (1) directing the District to return all fifty-six of the banned books to the school libraries where they were shelved prior to the ban and (2) enjoining the District from removing any books pending a further order from this Court.

DATED this 2nd day of January, 2024

NORTHERN JUSTICE PROJECT, LLC

By: /s/ Savannah Fletcher
    James J. Davis, Jr., AK Bar No. 9412140
    Savannah Fletcher, AK Bar No. 1811127
    Aneliese Palmer, AK Bar No. 2201001

AMERICAN CIVIL LIBERTIES UNION OF ALASKA FOUNDATION

By: /s/ Ruth Botstein
    Ruth Botstein, AK Bar No. 9906016

Attorneys for Plaintiffs

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 18 of 18
Case 3:23-cv-00265-SLG   Document 10-2   Filed 01/02/24   Page 18 of 18