James J. Davis, Jr., AK Bar No. 9412140
Savannah Fletcher, AK Bar No. 1811127
Aneliese Palmer, AK Bar No. 2201001
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: jdavis@njp-law.com
Email: sfletcher@njp-law.com
Email: apalmer@njp-law.com

Ruth Botstein, AK Bar No. 9906016
**AMERICAN CIVIL LIBERTIES UNION OF ALASKA FOUNDATION**
1057 West Fireweed Lane, Suite 207
Anchorage, AK 99503
(907) 258-0044
Email: rbotstein@acluak.org
Email: courtfilings@acluak.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAWN ADAMS & SCOTT ADAMS on behalf of H.A.; JESSICA CLARKSON & URIAH CLARKSON on behalf of W.C.; JOY HEASLEY and A. ROBERT HEASLEY on behalf of K.M-H. & M.M-H.; GANNON CLARKSON; and MITCHELL CLARKSON, <br><br> Plaintiffs, <br><br> vs. <br><br> MATANUSKA-SUSITNA BOROUGH SCHOOL DISTRICT, <br><br> Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br> Case No. 3:23-cv-00265-SLG |

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 1 of 18

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I. PRELIMINARY STATEMENT

The Matanuska-Susitna Borough School District ("District") tells this Court that although it summarily removed fifty-six books from all of its school libraries because a community member—perhaps, at times, just a single one—submitted a complaint about a book, this does not amount to a book "ban" because some of those books might, someday, be returned to the shelves *after* the District's specially selected committee evaluates the books.

Ten months have passed and not one of the fifty-six books has been returned to any library shelf. This is not a "more nuanced middle lane."[1] This is simply book banning by delay or by special committee. And, while local autonomy is a salutary notion, "local autonomy" cannot be used to abridge students' First Amendment rights.[2]

The District tells this Court that "it is not clear what, if anything, from *Pico* is binding on this case."[3] Actually, one thing from *Pico* is clear: "the First Amendment

---

[1] Defendant's Opposition to Motion for Preliminary Injunction, Docket 16 (hereinafter "Defendant's Opposition"), at 4.

[2] *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1030 (9th Cir. 1998) ("[A]ny school board attempting to remove books from its curriculum on the ground that the works might offend would likely be vulnerable to First Amendment actions brought by students desiring to study those books."); *see also Pratt v. Independent Sch. Dist.*, 670 F.2d 771, 779 (8th Cir. 1982).

[3] Defendant's Opposition at 14.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

forbids school officials from removing materials from school libraries to further narrowly partisan, political, or racist ends."[4]

It is "always in the public interest to prevent the violation of a party's constitutional rights."[5] Accordingly, this Court should issue a preliminary injunction returning all fifty-six banned books to the library shelves—until and unless the District proffers some pedagogical basis for each book's removal instead of, as here, being driven by the particular anti-LGBTQ ideologies of some vocal community members.

## II. STATEMENT OF FACTS

In April 2023, the District's School Board (hereinafter the "Board") removed fifty-six books from all of its school libraries.[6] This includes many classic and award-winning books.[7] This action was taken in direct response to a small but strident group of people who opposed the availability of books with "LGBTQ themes."[8]

---

[4] *Gonzalez v. Douglas*, 269 F. Supp. 3d 948, 973 (D. Ariz. 2017) (summarizing holding from *Pico*); *see also Bd. of Educ. v. Pico*, 457 U.S. 853, 870–71, 907 (1982) (plurality stating "[o]ur Constitution does not permit the official suppression of *ideas*" and dissent "cheerfully conced[ing] all of this").

[5] *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation omitted).

[6] Defendant's Answer, Docket 7 at 3.

[7] Matanuska-Susitna Borough Sch. Dist., *Challenged Book List* (Apr. 24, 2023), available at https://www.smore.com/d7fsy-library-committee-update?ref=email.

[8] *See, e.g.*, "Mar. 28th, 2023 MSBSD School Board/MSB Assembly Joint Meeting," https://vimeo.com/msbsd, at 12:30–15:30 ("Even if I was childless I would still be appalled, outraged, and disgusted that anyone was allowed to feature LGBTQ books at a book fair."); "Meeting Minutes," MSBSD School Board/MSB Assembly

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 3 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

At the time the District removed these fifty-six books from all of its libraries, there was neither a "Library Citizens Advisory Committee," nor any plan to determine whether or when *any* of these books might ever be returned to *any* school library. It was not until one month later that the District approved the concept of a "Library Citizens Advisory Committee" (hereinafter "the Committee"), a group that was tasked with reviewing the books and recommending whether any of them should be reshelved.[9]

It would be another three months before the Committee members were formally appointed by the Board.[10]

But the Board did not want to leave anything to chance. So, it decided to change how Committee members were selected.[11] Instead of having one randomly-drawn community member representative from each district, the Board decided to

---

Joint Meeting (Mar. 28, 2023), available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public ("A librarian and principal decided to have a book fair and it showcased LGBTQ materials against state law.").

[9] Agenda Item Details, May 24, 2023 – Regular School Board Meeting: Library Citizens Advisory Committee (May 24, 2023), available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

[10] Agenda Item Details, Aug. 2, 2023 – Regular School Board Meeting: Library Citizens Advisory Committee Members (Aug. 2, 2023), available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

[11] Declaration of Savannah Fletcher in Support of Plaintiffs' Reply in Support of Motion for Preliminary Injunction (hereinafter "Fletcher Decl.") at Exhibit 1 (Board Policy 1220 with tracked changes).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 4 of 18

personally select members for the Committee.[12] And, not surprisingly, the Board selected community members that shared its ideology vis à vis "LGBTQ themes."[13]

---

[12] *Id.*; s*ee also* May 24th, 2023 – MSBSD School Board Meeting (4:12:27–4:13:40, 4:58:16–4:58:59), available at https://vimeo.com/msbsd (Board member attempting twice to amend policy to randomize the selection of each member's appointment and both times the motion failing to be seconded).

[13] The Board "reached out" to various community members to gauge their "attitude" about serving on the Committee. For example, Board member Kendal Kruse first emailed eventual Committee appointment, Nathaniel Buck, on July 7, 2023, inviting him to answer her follow up questions to his application to serve on the Committee. Fletcher Decl. at Exhibit 2 (Email Between Board Member and Committee Member) at 22. In that email, Kruse listed "a few of the books that will be evaluated" and a link "to see a synopsis of the controversial parts of the book." In response, Buck wrote that he was "saddened and frustrated" that the issue was being debated, but that "this is where the cultural battle is today." *Id.* at 21. The next day, Buck followed up by sharing that he believes in "the importance of sexual ethics and promoting good while resisting, lovingly, all promiscuity whether that be in ideology or practice." *Id.* at 16. In case Buck's "attitude" was not yet sufficiently clear for Board member Kruse, he confirmed in an email on July 18, 2023, that:

> I will be pushing hard to remove or restrict many of the materials in consideration. The ones you listed in the initial email are all books id [sic] seek to remove. If you are ok with me taking this approach, then great.

In response, Kruse wrote, "I am glad you have accepted. . . . I think you will be an excellent choice as an example of 'community standard.'" *Id.* at 2. And on August 2, 2023, the Board voted to appoint Nathaniel Buck to the Committee. "Minutes," Aug. 2, 2023 Regular School Board Meeting, available at https://go.boarddocs.com/ak/matsu/Board.nsf/vpublic?open. To further stack the deck, the Board voted to remove two of the six District employees that would have served as Committee members. Board member Jacob Butcher made the reasoning for their removal very clear: "Having almost an equal number of district employees, I'm concerned about defeating the purpose of a citizen advisory committee, making it **more of an even playing field** between citizens and school district employees. I would **feel more comfortable** having . . . it a more citizen-heavy committee, if you know what I mean." Aug. 2, 2023 – MSBSD School Board Meeting (51:58 – 53:00), available at https://vimeo.com/msbsd.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

But even that was not enough. The Board also decided to make sure that the Committee knew how to keep score. The Board created a "rubric sheet" for the Committee to "review whether books are criminally indecent under Alaska Law."[14] The rubric sheet is reportedly modeled after a criminal child pornography statute, AS 11.61.128.[15] But, unsurprisingly, the rubric sheet excludes a critical component of AS 11.61.128: it does not ask what "a reasonable person" would find, but instead asks the individual Committee Member for his or her idiosyncratic opinion on the literary, artistic, educational, political, and scientific value of each book.[16]

This "stack the deck" process is what the District now tells this Court is the "nuanced middle lane."[17]

In any event, it has been ten months since the District removed all of these books from all of its libraries, i.e., almost an entire school year. And, the District's Committee has only gotten around to reviewing nineteen of the fifty-six books. Which means, given the Committee's track record, it may be another year or two or three before the Committee reviews all fifty-six books.[18] And since its inception, at least

---

[14] *See* Affidavit of Justin Ainsworth ¶ 12, Docket 16-1; Defendant's Exhibit 6, Docket 16-8.

[15] *Id.*

[16] Defendant's Exhibit 6, Docket 16-8 at 2.

[17] Defendant's Opposition at 4.

[18] *See Pen American Center Inc., et al. v. Escambia County School Board*, Case No. 3:23-cv-10385-TKW-ZCB, 2024 U.S. Dist. LEXIS 7314, at *10 n.12 (N.D. Fla. Jan. 12, 2024) ("if the review process has not been completed in a reasonable period of time and the book has effectively been placed in an indefinite 'restriction purgatory' . . . it

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 6 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

four additional books have been removed from school libraries—with no notice to the public—and the Committee has been tasked with reviewing them as well.[19]

Of the nineteen books that the Committee *has* gotten around to reviewing, the Committee has recommended that five remain completely banned and that another twelve be banned from all middle school libraries.[20] Only one of the nineteen books was recommended to be re-shelved at both middle and high school libraries.[21] Again, this is the "more nuanced middle lane."[22]

Critically, in the wake of the Committee's reviews and recommendations, the District has taken *no* action.[23] What that means is simple: all fifty-six books remain off library shelves and inaccessible to students, with more being removed.[24] There is no timeframe for the District to decide whether to return any of the books.[25]

---

would seem that the restriction could be considered a *de facto* removal and it would be ripe for the Court to determine whether that action violates the First Amendment").

[19]  Fletcher Decl. at Exhibit 3.

[20]  "Book Review Outcomes," Library Citizens Advisory Committee, https://www.matsuk12.us/Page/49141 (last visited Jan. 30, 2024).

[21]  *Id.*

[22]  Defendant's Opposition at 4.

[23]  Affidavit of Kathy McCollum ¶ 8.

[24]  Fletcher Decl. at Exhibit 3.

[25]  *See* Defendant's Answer ¶¶ 10, 12.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 7 of 18

But the District tells this Court that this status quo, where none of the books are available and may never be, is not an actual ban on the books.[26]

## III. ARGUMENT AND AUTHORITIES

The legal question before this Court concerns what *Pico* and its progeny mean: can a school district indefinitely remove dozens of books from all of its libraries, *prior* to any meaningful review or justification, because certain vocal community members do not like the ideas expressed in those books? Or do such ham-handed actions raise constitutional concerns?

### A. Removal of Books Prior to Any Meaningful Review Violates the First Amendment.

Courts have been asked to weigh in on school book bans for decades.[27] In all of these cases, the school's *motivation* for removing a book is what the courts look at in determining whether the school acted unconstitutionally.[28] To pass constitutional

---

[26] Defendant's Opposition at 9.

[27] *See Board of Educ. v. Pico*, 457 U.S. 853 (1982); *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177 (11th Cir. 2009); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022 (9th Cir. 1998); *Pratt v. Indep. Sch. Dist.*, 670 F.2d 771 (8th Cir. 1982); *Pen American Center Inc., et al. v. Escambia Cnty. Sch. Bd.*, Case No. 3:23-cv-10385-TKW-ZCB, 2024 U.S. Dist. LEXIS 7314 (N.D. Fla. Jan. 12, 2024); *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, Case No. 4:23-cv-00474, 2023 U.S. Dist. LEXIS 231840 (S.D. Iowa Dec. 29, 2023).

[28] *See Pico*, 457 U.S. at 870 ("[W]hether petitioners' removal of books from their school libraries denied respondents their First Amendment rights depends upon the motivation behind petitioners' actions."); *Gonzalez v. Douglas*, 269 F. Supp. 3d 948, 972 (D. Ariz. 2017) (citing *id.*) ("A plaintiff may establish a First Amendment violation by proving that the reasons offered by the state, though pedagogically legitimate on their face, in fact serve to mask other illicit motivations.").

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

muster, the school's motivation must be reasonably related to "legitimate pedagogical concerns"[29] and not designed "to suppress an ideological or religious viewpoint with which the local authorities disagreed."[30] In other words, when a school district is considering whether to ban a specific book, it must meaningfully review it *prior* to removing it.[31] This is true even where there are allegations of graphic violence or factual inaccuracies.[32]

### 1. *Pico* and Its Progeny Do Not Permit Book Removals Motivated by Ideological Disagreements.

The District argues that *Pico* does not apply to its removal of books, and—if it does at all—actually supports its ongoing removal of books so long as the District, at some unknown point in the future, provides some sort of post hoc justification for its removal.[33] Not one case is cited by the District in support of this notion and it flies in the face of *Pico*. Instead, *Pico* prohibits book removals motivated by ideological disagreements. And the *only* justification the District has given for removing these books is in response to complaints about the books' "LGBTQ" and "communist"

---

[29] *ACLU of Fla.*, 557 F.3d at 1202.

[30] *Pratt,* 670 F.2d at 776.

[31] *See ACLU of Fla.*, 557 F.3d at 1184–90 (detailing four-stage review process for challenged book prior to its removal); *Pratt*, 670 F.2d at 774 (detailing three-stage review process for challenged film in school prior to its removal). It is worth noting that a book would never have been added to a school library's collection in the first place without review and affirmative acquisition of the book by District staff. No student is asking the District to keep a book on the shelf that it did not already voluntarily put there.

[32] *Pratt*, 670 F.2d at 774.

[33] Defendant's Opposition at 17.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

themes, among others, all squarely ideological in nature.[34]

First, there is *Pico's* plurality. The plurality states—and is explicitly supported by Justice Blackmun's concurrence and the dissent in stating—that "[school boards] rightly possess significant discretion to determine the content of their school libraries. But that discretion may not be exercised in a narrowly partisan or political manner. . . . Our Constitution does not permit the official suppression of ideas."[35]

Second, Justice Blackmun's concurrence joins in nearly all of the three-Justice plurality. Blackmun writes "that certain forms of state discrimination *between* ideas are improper. In particular, our precedents **command** the conclusion that the State may not act to deny access to an idea simply because state officials disapprove of that idea for partisan or political reasons."[36] Blackmun goes on to state that

> school officials may not remove books for the *purpose* of restricting access to the political ideas or social perspectives discussed in them, when the action is motivated simply by the officials' disapproval of the ideas involved. It does not seem radical to suggest that state action calculated to suppress novel ideas or concepts is **fundamentally antithetical** to the values of the First Amendment.[37]

---

[34] *See* Inside the District: Jillian Morrissey 2023-11-21, Big Cabbage Radio (Dec. 4, 2023), https://www.bigcabbageradio.org/2023/12/04/inside-the-district-jillian-morrissey-2023-11-21/, at 12:00–14:18; "Mar. 28th, 2023 MSBSD School Board/MSB Assembly Joint Meeting," https://vimeo.com/msbsd, at 16:00–19:00.

[35] *Pico*, 457 U.S. at 870–71.

[36] *Id.* at 878–79 (emphasis added).

[37] *Id.* at 879–80 (second emphasis added).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 10 of 18

Blackmun *does not* defer to local "community norms" as a permissible reason to "shield students from certain ideas that officials find politically distasteful."[38] To the contrary, "[t]he very purpose of a Bill of Rights was to withdraw certain subjects and vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts."[39]

Even the dissent agrees with the principle that "[o]ur Constitution does not permit the official suppression of *ideas*."[40] So while the District seeks to render *Pico* as either irrelevant or unintelligible,[41] the fact is that every opinion in *Pico* supports the core premise Plaintiffs raise in this case: that the District does not have the right to remove fifty-six books based solely on individual community members disagreeing with the "LGBTQ" themes or other ideas that are contained in those books.[42]

Nor does *Pico* stand alone. The same year *Pico* was decided, the Eighth Circuit ruled that the First Amendment protects the rights of students not to have a film removed from classrooms (not just libraries) simply "because a majority of its [school board] members object to the films' religious and ideological content and wish to

---

[38] *Id.* at 882.

[39] *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

[40] *Pico*, 457 U.S. at 907.

[41] Defendant's Opposition at 14 (stating that "it is not clear what, if anything, from *Pico* is binding on this case").

[42] This includes Justice White's concurrence. He concurred in remanding because he agreed with the *Pico* motivation test and consequently agreed that further fact-finding was required. *Pico*, 457 U.S. at 883.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

prevent the ideas contained in the material from being expressed in the school."[43] The notion that suppression of ideas by the government—including public schools—is unconstitutional is far from novel, and it is supported by far more cases than *Pico*.[44]

### 2. Removing Books with *No* Review Is Unconstitutional.

Where, as here, books have been banned or removed simply in "response to the citizens' objections" and "without any reasons for [the Board's] action," the removal violates the constitution.[45] Put otherwise, the knee jerk removal of books from school libraries, without any sort of explicated pedagogical basis, is unconstitutional.[46]

*ACLU of Florida, Inc. v. Miami-Dade County School Board* illustrates how a school board must proceed if it is entertaining a request to ban a book.[47] There, a book—*Vamos a Cuba*—was challenged on the grounds that the book was factually

---

[43] *Pratt v. Independent Sch. Dist.*, 670 F.2d 771, 773 (8th Cir. 1982).

[44] *See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. This has been the unmistakable holding of this Court for almost 50 years."); *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943); *ACLU of Florida, Inc. v. Miami- Dade County Sch. Bd.*, 557 F.3d 1177, 1207 (11th Cir. 2009); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1030 (9th Cir. 1998); *Pratt v. Indep. Sch. Dist.*, 670 F.2d 771, 773 (8th Cir. 1982); *Gonzalez v. Douglas*, 269 F. Supp. 3d 948, 972 (D. Ariz. 2017) ("Students have a First Amendment right to receive information and ideas.").

[45] *Pratt*, 670 F.2d at 777.

[46] *Id.* at 778 (finding film ban unconstitutional after board "submitted its conclusory resolution reciting its purported concern about violence without any support"); *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, Case No. 4:23-cv-00474, 2023 U.S. Dist. LEXIS 231840, at *26 (S.D. Iowa Dec. 29, 2023) (granting preliminary injunction against "sweeping" removal of hundreds of books without review).

[47] 557 F.3d 1177, 1184–90 (11th Cir. 2009).

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

inaccurate.[48] The school district went through a "four-tiered administrative procedure for reviewing citizen requests to remove books from the district's libraries."[49] It was only after a principal reviewed the book, a school committee reviewed it, and a district-wide committee reviewed it, that the school board finally reviewed the book and voted to remove the book from the shelves.[50] The board members and "both sides' experts agreed that the book contained factual inaccuracies."[51] "Factual accuracy in a non-fiction book is not a matter of opinion. Under the *Pico* standard we are applying, the Board did not act based on an unconstitutional motive."[52]

The case before this Court is quite different: here there was zero review and no book-specific reasoning provided prior to removing fifty-six books (with an ever-growing number of new books being removed). Since there was no review, it is impossible for the District to show an objective, appropriate motive for removal of the books. This baseless removal fails the test used in *Miami-Dade*, which was based on *Pico*.[53]

In fact, the record before this Court confirms that the *only* criterion for

---

[48] *Id.*

[49] *Id.* at 1184.

[50] *Id.* at 1184–85.

[51] *Id.* at 1207.

[52] *Id.* (internal quotation removed).

[53] The District claims that Plaintiffs seek to prohibit the District from removing books "for any purpose." Defendant's Opposition at 12. In fact, Plaintiffs seek the very opposite: that the District be required to have *some* purpose for removal of the books, and that that purpose be in compliance with the First Amendment.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 13 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

banning a book was whether a community member said "I want this book gone."[54]

## B. That the Books Are "Under Review" and May Someday Be Returned Does Not Change the Analysis.

The District tells this Court that it only "temporarily removed" these fifty-six books, and accordingly, it is not in violation of the First Amendment.[55] The problem is with the actual reality, not the District's rosy colored sentiments. The District removed dozens of books in April 2023, but there was no committee finalized to even *begin* the review process until four months later in August. And, as of this date, the Committee has only reviewed nineteen of the ever-growing list of banned books (which is currently somewhere between fifty-six and seventy books).[56] And the Board has taken no action on any of the Committee's recommendations.[57] This is true despite the Board meeting twice a month, every month.[58]

In other words, these books have been banned from library shelves for over ten months and continue to be removed indefinitely. As one court explained, "indefinite

---

[54] Inside the District: Jillian Morrissey 2023-11-21, Big Cabbage Radio (Dec. 4, 2023), https://www.bigcabbageradio.org/2023/12/04/inside-the-district-jillian-morrissey-2023-11-21/, at 12:00–14:18.

[55] Defendant's Opposition at 9.

[56] Fletcher Decl. at Exhibit 3 (listing all books that have been removed along with books that have been challenged but were lost or already removed by the librarians).

[57] Affidavit of Kathy McCollum, Docket 16-2 ¶ 8.

[58] "School Board," Matanuska-Susitna Borough, https://matsugov.us/boards/school-board ("The School Board meets on the 1st and 3rd Wednesday of each month in the School Board Chambers.") (last visited Feb. 6, 2024).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 14 of 18

restriction purgatory could be considered a de facto removal."[59] Constitutional violations are not permitted even for "minimal periods of time."[60] A ten-month-plus ban is far more than a "minimal period[] of time, [and] unquestionably constitutes irreparable injury."[61]

### C. While a School Can Study the Pedagogical Appropriateness of a Book, It Cannot Do So Through a Sham "Citizens Advisory Committee."

Even if this review process were permissible, the Committee is a sham. First, the Board insisted on hand-picking Committee members rather than via random selection. As evidenced by Member Kendal Kruse's emails, the power to hand-select Committee members was critical to ensuring the Board's predetermined, desired result. Once the Board selected Committee members that espoused ideologies aligning with the Board's, it then solidified the power of its selected votes. The Board accomplished this by minimizing the presence of District staff on the Committee to create a "citizen-heavy" Committee that the Board's book-banning advocates could be "comfortable having."[62] This is despite the Board's own policy stating that staff are "well qualified" to review challenged materials and should be the first level of

---

[59] *Pen American Center Inc., et al. v. Escambia County School Board*, Case No. 3:23-cv-10385-TKW-ZCB, 2024 U.S. Dist. LEXIS 7314, at *10 n.12 (N.D. Fla. Jan. 12, 2024).

[60] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[61] *Id.*

[62] Aug. 2, 2023 – MSBSD School Board Meeting (51:58–53:00), available at https://vimeo.com/msbsd; *see also supra* note 13.

review.⁶³ This is not an unbiased Committee applying an objective pedagogical lens to its review.

### D. Plaintiffs Are Entitled to a Preliminary Injunction Because They Have Raised Serious Questions Going to the Merits.

The Ninth Circuit's rule is that a plaintiff is entitled to a preliminary injunction where she has raised "serious questions going to the merits [] and the balance of hardships tips sharply in plaintiff's favor."⁶⁴ Here, as reflected by the above discussion, Plaintiffs *have* raised serious questions regarding the merits. Additionally, the balance of hardships tips in their favor.

This is because there exists an ongoing violation of Plaintiffs' constitutional rights.⁶⁵ The harm will continue to grow as more books are secretly added to this "restriction purgatory" with no clear deadline to have final decisions made and permissible books returned to the shelves. Constitutional violations are not permitted even for "minimal periods of time."⁶⁶

By contrast, the District suffers no harm by continuing its review *without* removing the books, unless and until a legitimate review is complete and removal is deemed necessary due to pedagogical concerns. The District tries to argue that

---

⁶³ School Board Policy 1312.02, available at https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

⁶⁴ *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132–33 (9th Cir. 2011).

⁶⁵ *See Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

⁶⁶ *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

requiring this review *prior* to removal would cause irreparable harm to the District.[67] But all of the cases it relies on are inapposite.[68] The District cites *Epperson v. Arkansas*, where the Supreme Court actually *struck down* a state law that prohibited teaching evolution in state-funded schools.[69] The "care and restraint" courts ought to show when reviewing the operation of public schools do not negate "the First Amendment's mandate in our education system [] to safeguard the fundamental values of freedom of speech and inquiry and of belief."[70] None of the cases cited by the District support the notion that the District has the autonomy to remove dozens of its library books prior to any meaningful review. A preliminary injunction does not harm the District's ability to operate its schools.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant a preliminary injunction (1) directing the District to return all of the removed books to the school libraries where they were shelved prior to their removal and (2) enjoining the District from removing

---

[67] Defendant's Opposition at 18–19.

[68] *See id.* at 18.

[69] *Epperson v. Arkansas*, 393 U.S. 97, 109 (1968).

[70] *Id.* at 104. The District cites three other cases which also do not support its claim of "local autonomy" to ban books without review or justification. *See Hazelwood v. Kuhlmeier*, 484 U.S. 260, 272–73 (1988) (permitting school administrator removal of student newspaper article outing teenagers' sexual activity); *Brach v. Newsom*, 2020 U.S. Dist. LEXIS 190361, at *5 (C.D. Cal. Aug. 21, 2020) (denying temporary restraining order seeking to enjoin statewide COVID school re-opening framework); *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (preventing court from decreeing complete structural reform for Statewide educational program and budget).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
*Adams, et. al v. Matanuska-Susitna Borough Sch. Dist.*
Case No. 3:23-cv-00265-SLG
Page 17 of 18

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

any books pending a further order from this Court.

DATED this 6th day of February, 2024.

NORTHERN JUSTICE PROJECT, LLC

By: /s/ Savannah Fletcher
James J. Davis, Jr., AK Bar No. 9412140
Savannah Fletcher, AK Bar No. 1811127
Aneliese Palmer, AK Bar No. 2201001

AMERICAN CIVIL LIBERTIES UNION OF ALASKA FOUNDATION

By: /s/ Ruth Botstein
Ruth Botstein, AK Bar No. 9906016

Attorneys for Plaintiffs

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645