# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DAWN ADAMS & SCOTT ADAMS
on behalf of H.A.; JESSICA
CLARKSON & URIAH CLARKSON
on behalf of W.C.; JOY HEASLEY
and A. ROBERT HEASLEY on
behalf of K.M-H. & M.M-H;
GANNON CLARKSON; and
MITCHELL CLARKSON,

        Plaintiffs,

    v.

MATANUSKA-SUSITNA
BOROUGH SCHOOL DISTRICT,

        Defendant.

Case No. 3:23-cv-00265-SLG

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

Before the Court at Docket 10 is Plaintiffs' Motion for a Preliminary Injunction, in which they ask that the Court direct Defendant Matanuska-Susitna Borough School District (the "District") to return all 56 of the removed books at issue in this case to the school libraries where they had previously been shelved and enjoin the District from removing any additional books pending further order from the Court. The District responded at Docket 16. Plaintiffs replied at Docket 19. Oral argument was heard on April 1, 2024.[1]

---

[1] Docket 27 (minute entry).

## BACKGROUND

On April 13, 2023, the District announced that in response to "public concern both in the [District] and nationally" about the "types of library materials available in school libraries" it was "reviewing library collection policies and . . . individual books."[2]  Indeed, complaints about the content of books available in the District's libraries were made during numerous meetings of the Matanuska-Susitna Borough School Board ("School Board") throughout the winter and spring of 2023.[3] The critical comments included objections to the availability of books with "LGBTQ themes" and discriminatory comments connecting LGBTQ individuals and books to "sexual grooming."[4]  Comments also included concerns about books containing "sexually explicit" content.[5]  The District announced that it was planning to convene a District-wide Library Advisory Committee ("Library Committee") to address public

---

[2] The Court takes judicial notice of these public records pursuant to Federal Evidence Rule 201.  MSBSD Libraries, MSBSD Office of Instruction (Apr. 13, 2023), https://secure.smore.com/nmbs1-msbsd-libraries?ref=email.

[3] Docket 16-2 at ¶ 3; Inside the District: Jillian Morrissey 2023-11-21, Big Cabbage Radio (Dec. 4, 2023), https://www.bigcabbageradio.org/2023/12/04/inside-the-district-jillian-morrissey-2023-11-21/, at 12:00–14:18.

[4] Mar. 28th, 2023 MSBSD School Board/MSB Assembly Joint Meeting, https://vimeo.com/810791067, at 12:30–15:30, 16:00-19:00, 22:50-24:38; Meeting Minutes, MSBSD School Board/MSB Assembly Joint Meeting (Mar. 28, 2023), https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

[5] Mar. 28th, 2023 MSBSD School Board/MSB Assembly Joint Meeting, https://vimeo.com/msbsd, at 22:50–24:38; Meeting Minutes, MSBSD School Board/MSB Assembly Joint Meeting (Apr. 5, 2023), https://go.boarddocs.com/ak/matsu/Board.nsf/Public.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 2 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 2 of 23

concerns about library materials, and it invited members of the public to submit applications to serve on the Library Committee.[6]

A little over a week later, the District emailed parents identifying 56 books that had been challenged.[7]  The books included well-known titles such as *The Bluest Eye*, *Slaughterhouse-Five*, *The Kite Runner*, and *The Handmaid's Tale*.[8]  It is undisputed that all of these challenged books were removed from circulation at that time.  Representatives for the District confirmed that the action was taken in response to public comments made to the School Board beginning in early 2023.[9]  There was no individualized determination made about the challenged books before their removal.  The District indicated in its email to parents that it was continuing with plans to establish a Library Committee in connection with the removal of these books and that the committee would be comprised of 13 members: seven community members, two staff members, two School Board

---

[6] MSBSD Libraries, MSBSD Office of Instruction (Apr. 13, 2023), https://secure.smore.com/nmbs1-msbsd-libraries?ref=email.

[7] Library Committee Update, MSBSD Office of Instruction (Apr. 24, 2023), https://secure.smore.com/d7fsy-library-committee-update?ref=email.

[8] Challenged Book List April 24, 2023 (PDF file attached to email), https://secure.smore.com/d7fsy-library-committee-update?ref=email.

[9] MSBSD Libraries, MSBSD Office of Instruction (Apr. 13, 2023), https://secure.smore.com/nmbs1-msbsd-libraries?ref=email (stating that books have been reviewed "[i]n response to these concerns"); Inside the District: Jillian Morrissey 2023-11-21, Big Cabbage Radio (Dec. 4, 2023), https://www.bigcabbageradio.org/2023/12/04/inside-the-district-jillian-morrissey-2023-11-21/, at 12:00-14:18.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 3 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 3 of 23

members, and two librarians.[10]  The School Board announced that it had received over 300 applications from members of the public interested in serving on the Library Committee and that it would conduct a "randomized lottery drawing … from each of the seven school board voting districts to select parent/community member representation."[11]

The following month, in May 2023, the School Board, which is comprised of seven members that are representative of the various geographical areas within the Matanuska-Susitna Borough, formally voted to establish the Library Committee.  However, departing from what was announced in the April email, the School Board opted not to hold a randomized drawing from the pool of applicants. Instead, the seven available community member positions would be determined by the School Board itself, with each member "responsible for recommending a community member to represent their respective district."[12]

Plaintiffs submitted evidence that one of the School Board members

---

[10] Library Committee Update, MSBSD Office of Instruction (Apr. 24, 2023), https://secure.smore.com/d7fsy-library-committee-update?ref=email.

[11] *Id.*

[12] Agenda Item Details, Action Item 10.C, Library Citizens Advisory Committee, Regular School Board Meeting, May 24, 2023, https://go.boarddocs.com/ak/matsu/Board.nsf/Public#; Meeting Minutes, Regular School Board Meeting, May 24, 2023, Item 10.C., https://go.boarddocs.com/ak/matsu/Board.nsf/Public# (approving Library Citizens Advisory Committee with denial of amendment to add selection of members at random).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 4 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 4 of 23

engaged in an email exchange with her potential committee member about his views on the issues. In these discussions, the potential committee member stated that he would push hard to "remove or restrict many of the materials in consideration."[13] He was chosen and appointed to the Library Committee.[14]

It took another two months for the School Board to choose and formally appoint the Library Committee members. At its August 2023 meeting to approve the committee members, the School Board voted to reduce the representation of District employees from six to four. The stated reason was to ensure that the Library Committee was not "an even playing field between citizens and school district employees" but rather a "citizen-heavy" committee.[15]

The resulting 11-member Library Committee began meeting in August of 2023. The committee was officially tasked with determining whether the challenged books were "criminally indecent" under Alaska law and whether to limit the books to certain grade levels.[16] In order to assist the Library Committee in

---

[13] Docket 19-3 at 1.

[14] *Id.*; Agenda Item Details, Action Item 8.A., Library Citizens Advisory Committee Members, Regular School Board Meeting, Aug. 2, 2023, https://go.boarddocs.com/ak/matsu/Board.nsf/Public#; Meeting Minutes, Regular School Board Meeting, Aug. 2, 2023, Item 8.A., https://go.boarddocs.com/ak/matsu/Board.nsf/Public#.

[15] Meeting Minutes, Regular School Board Meeting, Aug. 2, 2023, Item 8.A., https://go.boarddocs.com/ak/matsu/Board.nsf/Public#; Aug. 2, 2023, MSBSD School Board Meeting, https://vimeo.com/msbsd, at 51:50-53:00.

[16] Docket 16-1 at ¶¶ 8, 10, 12; Docket 16-2 at ¶¶ 5, 10; Docket 16-8. *See* Alaska Stat. §

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 5 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 5 of 23

understanding its task, the District provided a rubric sheet for the members to apply when considering each book.[17] The rubric sheet was created in collaboration with attorneys who represent the District.[18] Library Committee members also received in-person instruction at their first meeting from an attorney on how to properly apply the standard.[19]

As of June 6, 2024, the Library Committee had not yet completed its review of all the removed books. Ten of the books were not reviewed because they were deemed lost or stolen or otherwise not in circulation.[20] Five of the books were not reviewed because they were out of print or available in too few copies for the full Library Committee to review.[21] Of the books considered by the Library Committee, the committee voted to remove seven from circulation in all District libraries.[22] And the committee voted to retain 14 books in the District, but delegated a determination of "the age appropriateness of each title, which libraries will shelve

---

11.61.128; Distribution of indecent material to minors.

[17] Docket 16-8.

[18] Docket 16-1 at ¶ 12.

[19] MatSu School District Library Citizens Advisory Committee 2023-8-10, Big Cabbage Radio (Aug. 10, 2023), https://www.bigcabbageradio.org/2023/08/10/matsu-school-district-library-citizens-advisory-committee-2023-8-1o/.

[20] Docket 32-3.

[21] Docket 32-3.

[22] Docket 32-3.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 6 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 6 of 23

them, and any potential restrictions" to the District's Administration.[23]    An additional 14 books were remanded to the Administration with the authority to make a final decision regarding obscenity status and potential access restrictions.[24]   The Library Committee planned to review four additional titles in June, and the School Board intended to review those recommendations at its June 2024 meeting.[25]   The two remaining books will not be reviewed by the Library Committee; the School Board decided that the committee would not be renewed and that the Administration will make the content determinations for these two remaining books without input from the Library Committee or the School Board.[26]

No additional update has been provided as to the status of the four additional books the Library Committee was to review in June, nor as to the status of the books remanded to the Administration for additional or independent review.  It is unclear whether any of the books that the committee voted to retain have in fact been reshelved, and what, if any, determinations have been made by the Administration on these books, but Mat-Su schools are not in session at this time and are not scheduled to resume until August 15, 2024.[27]

_____

[23] Docket 32-3.

[24] Docket 32-3.

[25] Docket 32-2.

[26] Docket 32-2.

[27] The school calendars on the District's website list August 15, 2024, as the day school resumes for grades 1-12. *See* Matanuska-Susitna Borough School District, 2024-2025

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 7 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 7 of 23

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."[28] A plaintiff may demonstrate entitlement to a preliminary injunction by one of two methods. First, the plaintiff may satisfy the four-factor test established by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*[29] Under this test, the plaintiff must demonstrate "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."[30] When the government is a party, the last two factors merge.[31] The first *Winter* factor—the likelihood of success on the merits—"is especially important when a plaintiff alleges a constitutional violation and injury."[32] In such a case, a showing of the likelihood of success on the merits is usually

---

Secondary School Calendar, https://www.matsuk12.us/about-us/calendars. Federal Rule of Evidence 201(b)(2) permits judicial notice of a fact that is "not subject to reasonable dispute because it: ... (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that courts may take judicial notice of undisputed matters of public record).

[28] *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008).

[29] *Id.*

[30] *Id.* at 20.

[31] *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted).

[32] *Baird*, 81 F.4th at 1040.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 8 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 8 of 23

sufficient to demonstrate irreparable harm "no matter how brief the violation"[33] and "also tips the public interest sharply in his favor because it is 'always in the public interest to prevent the violation of a party's constitutional rights.'"[34]

Alternatively, as the Ninth Circuit confirmed post-*Winter*, a sliding-scale variant of the preliminary injunction standard is available for a plaintiff that can only show that there are "serious questions" going to the merits instead of the more stringent showing of likelihood of success.[35] Serious questions are those that are "substantial, difficult, and doubtful" so as to "make them a fair ground for litigation" and a "more deliberative investigation."[36] In the presence of these serious questions, an injunction may still be issued if the balance of hardships tips sharply in the plaintiff's favor and the plaintiff can also satisfy the two remaining *Winter* factors.[37]

---

[33] *Id.*

[34] *Id.* (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

[35] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

[36] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

[37] *All. for the Wild Rockies*, 632 F.3d at 1135.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 9 of 23

**DISCUSSION**

I.   The First Amendment and Removal of School Library Books

Plaintiffs in this case assert a 42 U.S.C. § 1983 claim against the District for the violation of their First Amendment "right to receive ideas and information."[38] They allege the violation occurred when the District removed 56 books from school libraries because District officials "disagree[d] with the ideas presented in those books."[39]

The seminal case addressing the removal of books from public school libraries is *Board of Education, Island Trees Union Free School District No. 26 v. Pico*.[40]  In *Pico*, a local school board voted to remove nine books from school libraries under circumstances that suggested they were removed because the school board disagreed with the social, political, and moral content of the books.[41] A group of students filed suit against the school district arguing that the book removal violated their First Amendment rights.  The district court granted summary judgment in favor of the school district, but the appellate court reversed and

---

[38] Docket 1 at ¶ 17.

[39] *Id.* at 7.

[40] 457 U.S. 853 (1982) (plurality opinion).

[41] *Id.* at 857-59, 873-75.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 10 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 10 of 23

remanded the action for trial on the students' allegations.[42]

On appeal, the Supreme Court affirmed the appellate court's decision, albeit through a highly fractured decision. A four-justice plurality concluded that school boards cannot remove books from school libraries if they "*intended* by their removal decision to deny [students] access to ideas with which [the school board] disagreed, and if this intent was the decisive factor in [the school board's] decision."[43] However, only three of those four justices held that the First Amendment rights of public school students "may be directly and sharply implicated by the removal of books from the shelves of a school library."[44] Justice Blackmun, while mostly concurring in the three-justice opinion, explained that he had formed a "somewhat different perspective on the nature of the First Amendment right involved."[45] He declined to rely on the distinct nature of public school libraries and students' right to receive information, and instead based his decision on the principle that "the State may not suppress exposure to ideas—for the sole *purpose* of suppressing exposure to those ideas—absent sufficiently

---

[42] *Id.* at 859-60.

[43] *Id.* at 871 (emphasis in original). The Ninth Circuit has described *Pico* as holding "that a school board could not remove books from a school library if it did so 'in a narrowly partisan or political manner.'" *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1027 n.5 (9th Cir. 1998) (quoting 457 U.S. at 870-71).

[44] 457 U.S. at 866.

[45] *Id.* at 875-76 (Blackmun, J., concurring in part and concurring in the judgment).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 11 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 11 of 23

compelling reasons."[46]   Justice White concurred in the judgment, affirming the appellate court's ruling that the school board's motivation for removing the books was a triable issue of fact without reaching the First Amendment question.[47]   Three of the four dissenting justices, while asserting that students did not have a right to have any particular book on a school library shelf and finding that the school district did not violate the First Amendment, acknowledged that the First Amendment barred a school board from operating in an overly narrow partisan or discriminatory manner.[48]   They conceded that a school board could not order the removal of all books "supporting a particular political party" or "advocating racial equality and integration," but noted that these "extreme examples are seldom the ones that arise in the real world of constitutional litigation."[49]   Rather, the dissenters noted that of the nine removed books in *Pico*, eight of them "contained demonstrable amounts of vulgarity and profanity" and the ninth "contained nothing that could be considered partial or political."[50]

Given the splintered nature of the decision, lower courts have acknowledged

---

[46] *Id.* at 877 (emphasis in original).

[47] *Id.* at 883 (White, J., concurring in judgment).

[48] *Id.* at 907, 911 (Rehnquist, J., dissenting).

[49] *Id.* at 907.

[50] *Id.* at 907-08.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 12 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 12 of 23

*Pico's* weak precedential value.[51]  These courts nonetheless presume that the four-justice plurality decision applies in the absence of any further precedent on the issue.[52]  Indeed, the Ninth Circuit, while not having the opportunity to apply *Pico* directly, has referenced the decision in the context of a dispute regarding a public school's curriculum. There, it noted that *Pico*, while addressing school libraries and not school curriculum, is "particularly helpful in identifying the First Amendment interests that are involved in [a school curriculum] case."[53] These interests include "the students' rights to receive a broad range of information so

---

[51] *See Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1200 (11th Cir. 2009) (noting that because of the fractured decision *Pico* lacks precedential value); *Griswold v. Driscoll*, 616 F.3d 53, 57 (1st Cir. 2010) (noting that "*Pico's* rule of decision . . . remains unclear"); *Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184, 188-89 (5th Cir. 1995) (noting that *Pico* is not binding); *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 875 (D. Kan. 1995) ("The plurality decision in *Pico* is not binding precedent.").

[52] *Am. Civ. Liberties Union of Fla.*, 557 F.3d at 1200, 1204 (stating that *Pico* was not precedential but then stating that "discerning the nature of the Board's motive will, under the standard we are assuming applies, determine the plaintiffs' First Amendment claim"); *Campbell*, 64 F.3d at 189 (noting that while not binding, *Pico* "properly serve[s] as guidance" in determining the constitutionality of a school board's removal of a library book); *Griswold*, 616 F.3d at 57 (assuming without deciding that "some version of the plurality view is good law"); *Case*, 908 F. Supp. at 875 ("The court notes . . . that this is the only Supreme Court decision dealing specifically with the removal of books from a public school library. . . [and] there are no Tenth Circuit Court of Appeals decisions directly on point.  Thus, the court concludes that it should follow the *Pico* decision . . . ."); *GLBT Youth in Iowa Schs. Task Force v. Reynolds*, Case Nos. 4:23-cv-00474, 4:23-cv-00478, 2023 WL 9052113, at *14 (S.D. Iowa Dec. 29, 2023) ("Notwithstanding the splintered nature of the decision, *Pico* provides some guidance that remains applicable today.").

[53] *Monteiro*, 158 F.3d at 1027 n.5.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 13 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 13 of 23

that they can freely form their own thoughts."[54]

It is thus well-established in this Circuit that the First Amendment places some limitations on a school board's ability to remove books from its library shelves. Further, the *Pico* plurality remains the most applicable standard as to the scope of those limitations. Thus, while school boards have "significant discretion to determine the content of their school libraries," "that discretion may not be exercised in a narrowly partisan or political manner," or "motivated by racial animus."[55] A school board may, however, remove a book from its libraries based on "pervasively vulgar" content or "educational suitability."[56] Thus, courts determine the First Amendment issue by examining the defendant school board's or administrator's motivation for removing library books.

II. <u>Plaintiffs' Showing of Success on the Merits</u>

Here, the District removed 56 books in April 2023 with no stated reason apart from responding to public concerns. Those concerns range from legitimate reasons related to sexually explicit content to illegitimate, viewpoint-based reasons, particularly involving invidious comments against LGBTQ individuals.

---

[54] *Id.*

[55] *Pico*, 457 U.S. at 870-71.

[56] *Id.* at 871; *see Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986) (discussing *Pico*).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 14 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 14 of 23

After the removal, the District developed an ad hoc plan to establish a Library Citizens Advisory Committee, which would review each book and make individual recommendations as to whether the book should be removed permanently or returned to all or some school libraries. Based on the parties' filings and as discussed above, the formal process neared completion in June 2024, with the Library Committee recommending the permanent removal of only a handful of the 56 books, presumably, based on the evidence in the record provided thus far, for reasons related to indecency and sexually explicit content. The individualized reasons for retention or removal of each book and whether those reasons pass muster under the reasoning in *Pico* are not at issue at this stage of this litigation. Rather, the issue presented to this Court at this juncture is whether the District may remove numerous books from the school libraries for over a year based solely on citizen complaints, even when at least some of those complaints were viewpoint based or discriminatory in nature, while it undertakes a review of the challenged books of indefinite duration.

Few other district courts have addressed this issue. In *L.H. v. Independence School District*,[57] the plaintiffs challenged the defendant school district's policy that automatically removed material in school libraries upon receipt of any challenge to such material pending a formal review. Under that policy, a student or parent could

---

[57] Case No. 4:22-cv-00801-RK, 2023 WL 2192234 (W.D. Mo. Feb. 23, 2023).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 15 of 23

make a formal complaint against any school by submitting a form to the superintendent. The challenged material was then automatically removed from the library at that time. Under the policy, the superintendent and the school librarian would promptly review the complaint and decide whether to return the challenged material to the library or remove it from circulation permanently.[58] If a person objected to their decision, then the policy called for the appointment of a nine-person review committee within 15 days, representing various school and citizen interests. Then, within 20 days, the committee would make a written recommendation to the school board on whether to retain the material, retain the material with restrictions, or not retain the material.[59] The school board would then make the final determination.[60]

The Western District of Missouri held that the plaintiffs had failed to show that they had a fair chance of success on their argument that the school district's automatic-removal policy was unconstitutional.[61] The court recognized that under the plurality's reasoning in *Pico*, removal of materials from a school library violates the First Amendment when the decision is made with the intent to deny students

---

[58] *Id.* at *1.

[59] *Id.* at *1-2.

[60] *Id.* at *2.

[61] *Id.* at *5.

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 16 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 16 of 23

access to ideas with which officials disagree.  However, it found that the automatic removal policy was viewpoint neutral, in that it required the temporary removal of material anytime the district received a complaint, regardless of the basis of the complaint or the person making the complaint.[62]  As such, the temporary removal of a library book pending official review, in and of itself, did not impute an impermissible motive on the school district.

The Eastern District of Missouri came to the same conclusion in *C.K.-W. v. Wentzville R-IV School District*.[63]  In that case, the defendant school district had a similar policy that allowed parents and students to initiate challenges to library materials.  Under that policy, when a principal received a complaint, she was required to immediately remove the material from the library pending a formal review.[64]  The formal review process consisted of the superintendent appointing a committee within 15 days of receiving the complaint, which was then required to provide a recommendation to the school board about the material within 20 days, which would then make the final decision.[65]

The district court held that the plaintiffs were not entitled to a preliminary

---

[62] *Id.*

[63] 619 F. Supp. 3d 906 (E.D. Mo. 2022).

[64] *Id.* at 910.

[65] *Id.*

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 17 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 17 of 23

injunction barring further application of the automatic removal policy.[66]    It concluded that the policy was viewpoint neutral: "When the District temporarily removes all complained-of books, and does so evenhandedly, it necessarily cannot be removing them with the intent to deny students access to ideas with which the District disagrees."[67]

The rationale used by those two district courts to deny the plaintiffs' request to prohibit the temporary removal of library books pending formal review is not directly applicable to the circumstances here.   In those cases, the temporary removal was conducted pursuant to an established policy that was applied in a viewpoint neutral manner and with strict time limits on the duration of the temporary removal if the material was to be retained.  Here, the District had no formal policy addressing challenges to library materials.   It does, however, have a policy to address complaints about instructional materials.[68]   For those materials, when a complaint is lodged, the Superintendent or designee is tasked with conducting a review and deciding whether the material is appropriate.   There is no provision in the policy that provides for the removal of the challenged instructional materials pending review or that a committee will be formed to review the complaint.  The

---

[66] *Id.* at 920.

[67] *Id.* at 917-18.

[68] Docket 16-7 (Matanuska-Susitna School District Board Policy 1312.02).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 18 of 23

policy simply states that "the Superintendent and staff are well qualified to consider complaints."[69]  The policy encourages complainants to accept the Superintendent or designee's decision as final, but it also provides for an appeal to the School Board if the complainant is dissatisfied with the school administrator's decision.[70]

This policy was not followed here.  There was no administrative review and then appeal.  Instead, the School Board, reacting to citizen complaints, removed all of the challenged library materials from circulation in April 2023.  It then, over the next four months, developed a procedure to formally review the challenged books with no set time constraints by forming a "citizen-heavy" review committee. Once the committee was finally chosen in August 2023, the process has been slow-moving, lasting over ten additional months. According to the June 4, 2024, supplemental report filed with the Court, it appears that none of the removed books have yet been reshelved.  That is, the 56 books have evidently been unavailable for more than a full school year, even though the Library Committee has recommended retaining many of the books.

On the current record, Plaintiffs have shown that the review process to date "raise[s] the specter of official suppression of ideas."[71]  Plaintiffs have therefore, at

_____

[69] Docket 16-7.

[70] Docket 16-7.

[71] *Griswold*, 616 F.3d at 57 (internal quotation marks omitted) (discussing the facts in *Pico* that raised an issue about the improper intent on the part of the school board).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 19 of 23

a minimum, shown "serious questions going to the merits" about the constitutionality of the District's wholesale, ad hoc, and indefinite removal of the books.

III.    Remaining Preliminary Injunction Factors

As noted above, because Plaintiffs have shown a serious issue going to the merits, they must be able to show that the balance of hardships tips sharply in their favor and that the other two *Winter* factors—irreparable harm and public interest— also support the issuance of an injunction.[72]  Given that the evidence suggests a favorable ruling for the Plaintiffs on a constitutional issue, irreparable harm is present.[73]  That harm, in turn, sharply outweighs any hardship experienced by the District at this point.  Indeed, the individualized review of the books should be at or nearing completion.  The Administration has now had several months to "determine the age appropriateness of each title, which libraries will shelve them and any potential restrictions."  And it has had at least that long to make "a final decision regarding obscenity status and any potential restrictions on access" for the other 14 titles that the Library Committee remanded to the Administration for

---

[72] *All. for the Wild Rockies*, 632 F.3d at 1134-35.

[73] *Baird*, 81 F.4th at 1042 (noting that for constitutional violations, a showing of success on the merits "will almost always demonstrate" the requisite irreparable harm); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 20 of 23

Case 3:23-cv-00265-SLG    Document 35    Filed 08/06/24    Page 20 of 23

that purpose. There is no legitimate basis for the School District to further delay reshelving the books that do not meet the District's obscenity criteria to the school libraries before schools reopen on August 15, 2024. Nothing present in the facts suggests the operation of the District's schools would be negatively affected by the issuance of a preliminary injunction requiring the reshelving of any challenged book that lacks a formally announced, non-ideological basis for removal. Indeed, "[g]enerally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."[74]

## CONCLUSION

Based on the foregoing discussion, the Motion for Preliminary Injunction at Docket 10 is GRANTED as follows:

IT IS ORDERED that:

1. The Administration shall promptly review all of the 14 books that the Library Committee voted to retain in MSBSD libraries, as well as any additional books the committee recommended to retain in June 2024, to determine the age appropriateness of each title, which libraries will shelve them, and any potential restrictions.[75] The Administration shall

---

[74] *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

[75] *See* Docket 32-3 at 1 (A Green titles).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 21 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 21 of 23

publish and file with the Court its written findings with respect to each such book on or before   August 14, 2024.   All such books shall be reshelved by August 14, 2024, absent a written reason specified by the Administration or the School Board for the continued removal pending the resolution of this action that is consistent with this order.

2.  The Administration shall promptly review all of the 14 books that were remanded to the Administration, as well as any additional books that were remanded in June 2024, and make a final decision regarding obscenity status and any potential restrictions on access.[76]   The Administration shall publish and file with the Court its written findings with respect to each such book on or before August 14, 2024.  All such books shall be reshelved by August 14, 2024, absent a written reason specified by the Administration or the School Board for the continued removal pending the resolution of this action that is consistent with this order.

3.  The titles that have been removed from circulation, that are out of print or insufficient copies are available, lost or stolen from the library, or recommended by librarians for permanent removal, do not need to be

---

[76] Docket 32-3 at 1 (B Yellow titles).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 22 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 22 of 23

reshelved at this time.[77]

DATED this 6th day of August 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[77] Docket 32-3 at 1 (C Red, E Not Available, F Lost/Stolen titles).

Case No. 3:23-cv-00265-SLG, *Adams, et al. v. Matanuska-Susitna Borough School District*
Order on Motion for Preliminary Injunction
Page 23 of 23

Case 3:23-cv-00265-SLG   Document 35   Filed 08/06/24   Page 23 of 23